United States District Court
Southern District of Texas
**ENTERED**
July 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSHUA PARKS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 1:19-CV-222 |
| | § | |
| NORDEX USA, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

After Plaintiff Joshua Parks suffered injuries in an alleged employment-related accident at a wind turbine, he filed this lawsuit against Nordex USA, Inc. (Nordex) and several other defendants[1]. (1st Am. Compl., Doc. 42) Nordex now moves for dismissal of Parks's claims against it for failure to state a claim upon which relief can be granted. (Motion, Doc. 45) For the following reasons, the Court concludes that Parks's claim for negligence should be dismissed, but his causes of action for premises liability and gross negligence should not.

### I. Allegations and Procedural Background[2]

In November 2017, Parks worked as "a member of a crew providing maintenance to [Wind Turbine #H2]". (1st Am. Compl., Doc. 42, ¶ 4.1) At the time, Defendant Bruenning owned the wind farm, Defendant RWE owned Turbine #H2, and Defendant Axis provided the work crew, which included Parks, to provide services on Turbine #H2. (*Id.* at ¶¶ 4.1, 5.2) Nordex exercised "operational direction and control" of the worksite. (*Id.* at ¶¶ 5.2, 5.4)

On November 17, when Parks reported to work, the "lift to be used by workers while working at heights of 260 feet was inoperable due to being improperly maintained." (*Id.* at ¶ 5.15) As a result, Parks "had to use fixed access ladders that contained slip hazards, non-

---

[1] The other Defendants include Bruenning's Breeze Wind Farm, LLC, IEA Constructors, LLC, RWE Renewables Americas, LLC, F/K/A E.On Climate & Renewables North America, LLC, 3M, Capital Safety, LLC, Axis Renewable Group, Inc., World Wind and Solar, Campo Lejano Axis Grupo, Inc., Acciona Windpower North America, LLC, and First National Capital, LLC.
[2] For purposes of the Motion, the Court accepts Parks's allegations as true. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

certified and loose lifeline cables that came out three to four feet, a dangerous lockout tagout program and other dangerous and hazardous conditions." (*Id.* at ¶ 5.15)  About two days earlier, Nordex had been "made aware" of the slipping hazards and loose lifeline cables on the ladder. (*Id.* at ¶ 5.51)  Nevertheless, Nordex allowed Parks to use the ladder and directed Axis "to provide employees with a second ineffective 'Hass' locking devise [sic] system." (*Id.* at ¶ 5.50)

As Parks worked on Turbine #H2, his "fall protection failed and he fell approximately 25 [inches] inside a WTG Nacelle", causing him to suffer "a head injury and severe fractures". (*Id.*) The fall stemmed from "the hazardous conditions of an inoperable lift, slip hazards, loose lifeline cables, a defective lockout tagout locking device and improper supervision, improper hazard identification and lack of hazard correction". (*Id.* at ¶ 5.3)

At the time of the accident, Nordex and Axis were "under contract to follow industry standards for worker fall protection and to provide maintenance to" Turbine #H2. (*Id.* at ¶ 5.2) Axis provided the fall protection and "placed its workers . . . within the wind turbine rotor blades" to provide services. (*Id.*)  Nordex "directed all safety protocols including safety meetings and job procedures for the work involving the nacelle towers such as the one in question". (*Id.* at ¶¶ 5.2, 5.4)  In this capacity, Nordex employed a safety officer who "was in charge of fall protection" and who monitored and ensured the safety of the on-site work crew; "provided management personnel to identify and to correct the safety hazards at the wind turbine"; and "verified the safety of the work site to include any lockout/tagout issues regarding stored energy" before Axis employees entered the worksite. (*Id.* at ¶¶ 5.2–5.3).

According to Parks, Nordex failed to properly discharge its responsibilities at the worksite in several manners, including:

- "allow[ing] employees to continue working under dangerous conditions" that included "an inoperable lift, slip hazards, loose lifeline cables, a defective lockout tagout locking device[,] . . . improper hazard identification and lack of hazard correction";

- failing to inspect fixed ladders to ensure that they "were free of slipping hazards"; and

- failing to inspect and "correct[]" loose carrier cables that exceeded 9 inches, "exposing employees to falls".

(*Id.* at ¶¶ 5.2–5.3)  In addition, Nordex failed to train its employees in charge of crew safety at the jobsite by not adequately training them to identify hazards at heights of 260 feet off the ground, to properly inspect ladders before the work shift, and to properly correct hazards before allowing workers to be exposed to falls.  (*Id.* at ¶ 5.8)

## II. Applicable Standard

Nordex moves under Federal Rule of Civil Procedure 12(b)(6) to argue that Parks fails to allege sufficient facts upon which relief can be granted.  To survive such a challenge, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  These allegations, assuming they are true, "must be enough to raise a right to relief above the speculative level."  *Id.*

## III. Analysis

Parks sues Nordex in negligence, premises liability, and gross negligence.  (1st Am. Compl., Doc. 42, ¶¶ 5.1–5.9, 5.15–5.20, 5.47–5.54)  Nordex moves for dismissal of all three causes of action.

### A. Negligence

Under Texas law, a negligence claim requires three elements: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *D.*

*Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). "Negligence and premises liability claims . . . are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements". *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463 (Tex. 2017). "'[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.'" *United Scaffolding*, 537 S.W.3d at 471 (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). "'When distinguishing between a negligent activity and a premises defect, [Texas courts] focus[] on whether the injury occurred by or as a contemporaneous result of the activity itself—a negligent activity—or rather by a condition created by the activity—a premises defect.'" *United Scaffolding*, 537 S.W.3d at 472 (quoting *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d, 388 (Tex. 2016)).

In the present case, Parks alleges that faulty equipment and hazardous conditions on the premises led to his fall and caused his injuries. While Parks alleges that Nordex's omissions created these conditions or allowed them to persist, he does not allege that the affirmative conduct of a Nordex employee or agent directly caused his injuries. These allegations sound in premises liability, not in negligence. It is true that "at some point, almost every 'artificial condition upon which a premises liability claim is based may be created by an activity'". *Id*. But this fact does not transform a premises liability claim into one for negligence. *See id*. at 472 (declining "to completely eliminate the distinction between premises conditions and negligent activities"). As a result, under Texas law, Parks cannot succeed on this cause of action.

### B.  Premises Liability

"Premises liability is a special form of negligence where the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (citation omitted). Here, the parties agree that Parks was an Axis employee and as such, an invitee on the premises at the time of the accident. (*See*

1st Am. Compl., Doc. 42, ¶ 5.16; Motion, Doc. 45, 5).  Parks alleges that Nordex served as a general contractor with respect to Turbine #H2.  (1st Am. Compl., Doc. 42, ¶ 5.18)

Nordex argues that based on Parks's allegations, Nordex owed no duty to Parks, did not breach any duty, and did not proximately cause Parks's alleged injuries.  (Motion, Doc. 45, 5, 7).

### 1. Duty

"Ordinarily, a general contractor does not owe a duty to ensure that an independent contractor performs its work in a safe manner."  *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001).  "A duty does arise, however, if the general contractor retains some control over the manner in which the independent contractor performs its work."  *Id*.  "The general contractor's duty of care is commensurate with the control it retains over the independent contractor's work."  *Id*.  For example, if the general contractor retained the right to control safety on the premises, the general contractor's duty includes the issue of safety.  *Id*. at 783–84.  In addition, when a general contractor has general control over the premises, the general rule is that the general contractor "must use reasonable care to make the premises safe for the use of business invitees."  *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997).  The control that a general contractor maintains over a premise can stem from a contract or actual control.  *Lee Lewis Const., Inc.*, 70 S.W.3d at 783.

Parks alleges that Nordex controlled the premises that included Turbine #H2 and the nacelle in which the accident occurred.  (1st Am. Compl., Doc. 42, ¶ 5.16)  More specifically, Parks alleges that Nordex "directed all safety protocols including safety meetings and job procedures for the work involving the nacelle towers such as the one in question".  (*Id*. at ¶¶ 5.2, 5.4)  Nordex employed a safety officer who "was in charge of fall protection" and who monitored and ensured the safety of the on-site work crew; "provided management personnel to identify and to correct the safety hazards at the wind turbine"; and "verified the safety of the work site to include any lockout/tagout issues regarding stored energy" before Axis employees entered the worksite.  (*Id*. at ¶¶ 5.2–5.3)  These allegations suffice to support the legal theory that Nordex

owed a duty to invitees as to safety on Turbine #H2.

Nordex asserts that the First Amended Complaint includes "no factual basis to conclude that Nordex" either owed contractual duties or exercised actual control over safety at the premises. (Motion, Doc. 45, 6) But Parks alleges both that Nordex owed contractual obligations regarding safety on the premises and that it exercised actual control in this area. (*See* 1st Am. Compl., Doc. 42, ¶ 5.4) Although Parks does not attach a contract to the First Amended Complaint or include allegations detailing the agreement's provisions, his allegations regarding actual control suffice to support the premises liability claim.

Nordex also argues that Axis, as an independent contractor, bore the duty to ensure that its employees performed their work in a safe manner. (Motion, Doc. 45, 6) While Nordex correctly refers to a general principle, it ignores the allegations that Nordex maintained control over safety on the premises. From these allegations spring an exception to the general rule concerning general contractors.

### 2. Breach

A general contractor breaches its duty when it fails to "use reasonable care to make the premises safe for the use of business invitees." *Old*, 946 S.W.2d at 53. Parks's allegations that Nordex knew of hazardous and dangerous conditions in the fall protection system, but failed to cure the conditions and allowed Parks to use faulty equipment, are sufficient to satisfy the applicable standard.

### 3. Proximate Cause

"Proximate cause comprises two elements: cause-in-fact and foreseeability." *Lee Lewis Const., Inc*, 70 S.W.3d at 784. "The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Id*. (citation and quotations omitted). "Foreseeability means that an actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Id*. at 785 (citation and quotations omitted). "Foreseeability does not require an actor to anticipate

the precise manner in which the injury will occur; instead, the injury need only be of a general character that the actor might reasonably anticipate." *Id.* (citation omitted). "More than one act may be the proximate cause of the same injury." *Id.* (citations omitted).

Nordex argues that the allegations do not suffice to establish proximate cause because Parks alleges no facts regarding: "(1) what the alleged fault in the device caused it to fail; and (2) how a reasonable (i.e., non-negligent) inspection of a fall protection device should be conducted; and (3) how such a reasonable inspection should have discovered the purported fault in the device." (Motion, Doc. 45, 7)  The law, however, does not require such detail in the pleading.  As alleged by Parks, the failure of the fall protection device represents the cause-in-fact of his injuries: had the device worked properly, Parks would not have fallen.  In addition, accepting Parks's allegations as true for purposes of the Motion, Nordex knew of the inadequate fall protection system and approved its use, including by Parks.  Nordex's approval of and failure to correct or warn of the faulty fall protection system represents the cause-in-fact of Parks's injuries.

Parks's alleged injuries also were foreseeable.  According to Parks, Nordex knew of inadequacies within the safety systems designed to prevent and minimize falls, and Parks allegedly suffered his injuries from a fall.  By allowing Parks to use the faulty safety system, Nordex reasonably knew that Parks would be exposed to fall hazards.  These allegations adequately allege proximate cause.

### C. Gross Negligence

Nordex moves for dismissal of Parks's gross negligence claim, but does not specifically challenge the sufficiency of the allegations as to a particular element of the cause of action. Logically, if Parks's negligence and premises liability claims were subject to dismissal, the claim for gross negligence would suffer a similar fate.  But the Court has concluded that the premises liability claim survives dismissal, and such a claim can support one for gross negligence. *See Austin v. Kroger Texas L.P.*, 746 F.3d 191, 196 n.2 (5th Cir. 2014), *certified question*

*answered*, 465 S.W.3d 193 (Tex. 2015). Given that Nordex has not asserted any additional challenges to the cause of action for gross negligence, that claim also survives.

### IV. Conclusion

For these reasons, it is:

**ORDERED** that Defendant Nordex USA, Inc's Motion to Dismiss for Failure to State a Claim (Doc. 45) is **GRANTED IN PART AND DENIED IN PART**; and

**ORDERED** that Joshua Parks's cause of action for negligence as against Nordex USA, Inc. is **DISMISSED WITH PREJUDICE**. Parks's causes of action for premises liability and gross negligence against Nordex remain pending, as do his claims against all other defendants.

SIGNED this 21st day of July, 2020.

_____
Fernando Rodriguez, Jr.
United States District Judge